UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEFFREY OTTOWITZ,

      Plaintiff,

    -against-

SOHO MEDICAL DOCTORS, PLLC
d/b/a SOHOMD, SOHO MANAGING
COMPANY d/b/a SOHOMD,
JACQUES JOSPITRE, and EDWARD
RATUSH,

      Defendants.

Case No.:

**COMPLAINT**

Plaintiff JEFFREY OTTOWITZ ("Plaintiff" or "Mr. Ottowitz"), by and through his attorneys, FISHER TAUBENFELD LLP, alleges against Defendants SOHO MEDICAL DOCTORS, PLLC d/b/a SOHOMD and SOHO MANAGING COMPANY d/b/a SOHOMD (collectively, "SoHoMD" or the "Corporate Defendants"), and JACQUES JOSPITRE, and EDWARD RATUSH (the "Individual Defendants", and together with the Corporate Defendants, "Defendants") as follows:

## NATURE OF THE ACTION

1.     Plaintiff brings this action pursuant to the FLSA and the regulations thereto and the NYLL based upon the following acts and/or omissions Defendants committed:

    i.     Defendants' failure to pay Plaintiff the minimum wage for hours he worked; and

    ii.     Defendants' failure to pay Plaintiff his agreed-upon compensation for patient appointments completed, patient no-show appointments, and paid time off and holiday pay.

2.     In the alternative, Plaintiff brings this action to challenge Defendants' breach of contract for failing to pay him his agreed-upon compensation.

1

**JURISDICTION AND VENUE**

3.　　This Court has subject matter jurisdiction pursuant to the FLSA, 28 U.S.C. § 1337 (interstate commerce), and 28 U.S.C. § 1331 (original federal question jurisdiction). Supplemental jurisdiction over the New York State claims is conferred by 28 U.S.C. § 1367(a), as such claims are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4.　　Jurisdiction is conferred on this Court because Plaintiff and Defendants named herein are residents of the State of New York and/or conduct business in the State of New York. Jurisdiction is conferred on this Court as to all causes of action because they arise under New York State statutory law.

5.　　Venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims alleged herein took place in this District.

**PARTIES**
*Plaintiff*

6.　　Plaintiff is a New York resident who has been employed by Defendants since December 4, 2020, and remains employed by Defendants as of the date of this Complaint.

7.　　Plaintiff is a Licensed Clinical Social Worker (LCSW-R) who has provided clinical behavioral health services to SoHoMD's patients throughout his employment.

*Defendants*

8.　　Upon information and belief, Defendant Soho Medical Doctors, PLLC d/b/a SoHoMD is a New York professional limited liability company with offices located at 104 West 40th Street, Suite 500, New York, New York 10018.

2

9. Upon information and belief, Defendant Soho Managing Company d/b/a SoHoMD is a New York corporation with offices located at 104 West 40th Street, Suite 500, New York, New York 10018.

10. Defendant Soho Medical Doctors, PLLC and Defendant Soho Managing Company are referred to herein collectively as "SoHoMD" or the "Corporate Defendants."

11. SoHoMD is in the business of teletherapy and telepsychiatry, employing licensed mental health counselors, licensed clinical social workers, nurse practitioners, psychiatrists, and other licensed mental health professionals, together with ancillary administrative, billing, and support staff, to provide mental health services to patients.

12. Upon information and belief, at all times relevant hereto, the Corporate Defendants have been a business or enterprise engaged in interstate commerce employing more than two (2) employees and earning gross annual sales over $500,000.

13. Upon information and belief, at all relevant times hereto, Defendants have been and continue to be "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA.

14. Plaintiff used equipment, such as a computer and telecommunications software, that were not fully manufactured in New York State and therefore crossed through interstate commerce.

15. Defendants constitute an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r).

16. At all relevant times, Defendants have been Plaintiff's employers within the meaning of the NYLL §§ 2 and 651.

17. Defendant Doctor Jacques Jospitre is a co-founder and owner of SoHoMD.

3

18.    Defendant Doctor Edward Ratush is a co-founder and owner of SoHoMD.

19.    Each Individual Defendant possesses the authority to hire and fire employees, supervise their work schedules, set their rates of pay, and maintain payroll records.

20.    Each Individual Defendant approves the payroll practices for the Corporate Defendants' employees, including Plaintiff.

21.    Each Individual Defendant possesses operational control over SoHoMD and its employees including Plaintiff through his financial control over SoHoMD.

22.    Each Individual Defendant is individually sued in his capacity as an owner, officer, employee, and/or agent of the Corporate Defendants.

23.    Each Individual Defendant exercises sufficient operational control over the Corporate Defendants' operations to be considered Plaintiff's employer under the FLSA and NYLL.

24.    Upon information and belief, at all relevant times, Defendant Jospitre personally directed and controlled communications with Plaintiff regarding his compensation, including personally asking Plaintiff to rescind his resignation and personally representing that Plaintiff's outstanding wages would be paid, as set forth below.

**FACTUAL ALLEGATIONS**
*Defendants' Wage and Hour Violations*

25.    Plaintiff began working for SoHoMD on December 4, 2020, initially as a 1099 independent contractor.

26.    Effective September 15, 2021, Plaintiff's employment status changed from a 1099 independent contractor to a W-2 employee, and Plaintiff was thereafter paid on a biweekly basis.

27.    Upon his conversion to W-2 employee status, Defendants agreed to pay Plaintiff $70 per hour for each patient appointment completed, $70 per hour for each patient no-show

4

appointment, and $40 per hour for paid time off ("PTO") and holiday pay. Defendants also agreed to pay Plaintiff $40 for training hours.

28. Plaintiff's agreed compensation rates remained unchanged throughout his employment. Plaintiff never received a raise or any change to this compensation structure, and at no time was he disciplined, suspended, or informed that his pay was being withheld for any performance- or conduct-related reason.

29. From September 2021 until approximately April 2025, Defendants paid Plaintiff consistently and in accordance with this agreed compensation structure.

30. Upon information and belief, in or around July 2024, the two owners of SoHoMD, Defendants Jospitre and Ratush, became involved in a dispute regarding the ownership and financial control of the company. Plaintiff became aware of this dispute during his employment.

31. Beginning in approximately April 2025, and upon information and belief as a result of the dispute between Defendants Jospitre and Ratush, Defendants' payments to Plaintiff became inconsistent, delayed, and/or incomplete.

32. Beginning in approximately April 2025, Defendants stopped paying Plaintiff consistent compensation for patient appointments, patient no-show appointments, PTO, or holiday pay.

33. Beginning in approximately April 2025, Defendants also ceased making employer contributions to Plaintiff's 401(k) retirement plan.

34. From April 2025 forward, the amount of compensation Defendants owed to Plaintiff for work he had already performed continued to grow, despite Plaintiff's continued employment and his repeated requests for payment.

35. Despite Defendants' ongoing failure to pay him, Defendants continued to require Plaintiff to perform his full clinical duties and provide patient care.

36. On October 27, 2025, because of Defendants' continuing failure to pay him, Plaintiff submitted his resignation.

37. On November 3, 2025, Defendant Jospitre personally telephoned Plaintiff to convince him to continue his employment. During that call, Defendant Jospitre represented to Plaintiff that: (a) his compensation would become consistent going forward; (b) his outstanding earned compensation would be paid; and (c) Defendants would keep Plaintiff informed regarding the company's financial status and any organizational restructuring intended to resolve the payment issues.

38. In reliance on Defendant Jospitre's representations, Plaintiff rescinded his resignation and continued providing patient care for Defendants.

39. Notwithstanding Defendant Jospitre's representations, in November and December 2025 Plaintiff received only several partial payments, and the balance of unpaid compensation owed to him continued to accumulate.

40. Defendants failed to timely furnish Plaintiff with his 2025 Form W-2. Plaintiff did not receive his Form W-2 until approximately May 2026, which prevented him from timely preparing and filing his federal and state income tax returns.

41. From approximately April 2026 through July 2026, Defendants paid Plaintiff nothing for his continued work, apart from two partial payments in July 2026 representing only a small fraction of the compensation owed to him.

42. Beginning in approximately May 2026, Defendant Jospitre and Defendants' other representatives stopped responding to Plaintiff's repeated attempts, by telephone, email, and text

message, to obtain payment and information regarding his outstanding compensation. As of the date of this Complaint, Defendants have failed to meaningfully respond to Plaintiff for months.

43.    Upon information and belief, prior to the dispute between Defendants Jospitre and Ratush, SoHoMD used Engage PEO as its payroll processor and employer of record. Between approximately November 2025 and April 2026, Plaintiff was instead paid directly by Defendants rather than through a payroll processor, and Defendants have since transitioned to a new payroll processor.

44.    As a result of Defendants' multiple changes in payroll processing, including periods in which Plaintiff was paid directly, Plaintiff's wage records, including his Form W-2, have been inaccurate and unreliable.

45.    Beginning on or about July 7, 2026, Defendants unilaterally began paying Plaintiff at or near the minimum wage rate for patient appointments, rather than the agreed-upon rate of $70 per hour, without Plaintiff's agreement.

46.    As a result of Defendants' failure to pay Plaintiff for extended periods of his employment, Defendants failed to pay Plaintiff the minimum wage for hours he worked during those periods.

47.    In addition, Defendants unlawfully failed to pay Plaintiff the agreed-upon contractual amount for his work.

## FIRST CAUSE OF ACTION
### (Minimum Wage Violations under the FLSA)

48.    Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

49.    During periods within the statute of limitations period covered by these claims, Defendants failed to pay Plaintiff at all, or paid Plaintiff at less than the applicable minimum wage rate, for hours of work he performed for Defendants.

50.    By regularly failing to pay Plaintiff at all, or at less than the minimum wage, for his work, Defendants have had and operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of knowingly and willfully failing and refusing to pay Plaintiff at the required federal minimum wage, in violation of the FLSA.

51.    Plaintiff seeks damages in the amount of his unpaid compensation, liquidated (double) damages as provided by the FLSA, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION
### (Minimum Wage Violations under the NYLL)

52.    Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

53.    During periods within the statute of limitations period covered by these claims, Defendants failed to pay Plaintiff at all, or paid Plaintiff at less than the applicable minimum wage rate, for hours of work he performed for Defendants.

54.    By regularly failing to pay Plaintiff at all, or at less than the minimum wage, for his work, Defendants knowingly, willfully, regularly and repeatedly failed to pay Plaintiff at the required New York State minimum wage.

55.    As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiff has sustained damages and seeks recovery for unpaid wages in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided by NYLL § 663 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

## THIRD CAUSE OF ACTION
### (NYLL Failure to Pay Wages under the No Wage Loophole Act)

56.    Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

8

57. Defendants failed to pay Plaintiff's wages in violation of NYLL § 191 and NYLL § 193 and the No Wage Loophole Act.

58. As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiff has sustained damages and seeks recovery for unpaid wages in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided by NYLL § 198 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

## FOURTH CAUSE OF ACTION
### (Breach of Contract)

59. Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

60. Defendants entered into a contract with Plaintiff to pay him $70 per hour for each patient appointment completed, $70 per hour for each patient no-show appointment, and $40 per hour for PTO and holiday pay.

61. Plaintiff performed work for Defendants in reliance on this agreement.

62. From approximately April 2025 through the date of this Complaint, Defendants failed to make the necessary payments owed to Plaintiff under this agreement.

63. By virtue of the foregoing breach of contract by Defendants, Plaintiff has been damaged by not receiving the necessary payments, and is entitled to compensatory damages, interest, costs, disbursements, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment awarding:

A. Compensatory Damages in an amount to be determined at trial;

B. Prejudgment Interest;

C. Liquidated Damages pursuant to the FLSA and NYLL;

D. Plaintiff's costs and reasonable attorneys' fees; and

E. Any other relief this Court deems just and proper.

Dated: August 6, 2026
      New York, NY

                              Respectfully submitted,

                              *Michael Taubenfeld*

By: _____

Michael Taubenfeld, Esq.
FISHER TAUBENFELD LLP
225 Broadway, Suite 1700
New York, New York 10007
Phone: (212) 571-0700
*Attorneys for Plaintiff*

10